Webb, Mr. Rowan, go ahead and deal him. We'll do, Your Honor. As Your Honor is obviously aware, this is a Section 101 case in the post-Alice, post-Bilski world involving a claim for a method of play of a player-versus-player card game, and more specifically, a method of wagering, or dealing within that game that reverses both physically and in the tradition of how the game is played. It changes the odds the men are played dramatically in the real world. There are some physical elements within it. There are the cards. There's the table or a device. There are the players themselves, and there is, in the real world, a physical change in the direction of play. Now, it can be played also virtually, but you would end up with representations of all the same things. You go very close to conceding, Part 1 of the Alice test, that the claims are directed to the abstract idea of varying wagering positions or directions. Your Honor, I concede, as does Alice, that at some level, virtually every invention is based upon or employs an abstract idea. There has to be at some point the aha moment where the inventor says what is. An inventive concept. And so the question is, do these claims provide additional elements that supply that inventive concept? That's where we are as a matter of fact. Yes, Your Honor. They do it in two ways. One, it's done with respect to the specific physical elements that I talked about or the device, and those were found sufficient in all of those PTAB cases, which are the closest things I could find to games. These are obviously not binding on Your Honor, but you have the same thing in the Klassen case decided by this court where there was a method of looking at an inoculation schedule of something like the germ-based, like measles, seeing what it did for subsequent non-germ-based diseases like diabetes, looking at a second schedule and then just saying which one's best, and then inoculating. And in that case, this court said that the act of inoculation took it out of the realm of abstract ideas. And I would submit that in this case, the physical apparatus is significantly more than simply the same inoculation. I mean, it wasn't the device. So could I patent the following? Height seems to be a good qualification to have if you want to play basketball. If I decided that we were going to have the hoop 6 foot off the ground rather than 10, and we were going to have a shorter court so that people wouldn't have to expend as much energy, would that be a patentable idea? I think so, Your Honor. I mean, you've got – sure, there's an idea at root there, but you've got – you're moving the apparatus around. And if that turned out to be meaningful in the real world, if it passed the tests under 102, 103, and 112, which the cases make clear, ought to be the primary focus of what you're looking at. And that may well not. And in fact, even in this Klassen case that I mentioned, the court said, well, this may not pass the sniff test in terms of 102, 103. Well, we're trying to figure out what the sniff test is, and I think courts up and down the line are trying to figure that out. But why wouldn't any change in the rules of any game be patentable under 101 as long as the game is something that – Your Honor, that rule change has to first pass all of the rest of the tests, and then it has to – well, and it doesn't necessarily even have to have the apparatus. That just – that happens to be the hook that was used in all of the cases that I cited. But we have – there's a case that's directly relevant to Your Honor's attention that was decided by this court on December 5th that existed entirely in the virtual world. That's the DDR Holdings v. Hotel.com case, 773F, second one, 1245. In that case, there wasn't anything physical at all. What happened was there was a problem to be solved in the world of e-commerce, which was a customer goes into a more generalized store-type site. You want a specific product. You click on that product or that advertisement. You go to it. Now, you've lost yourself from the first site. The first site owner is unhappy about that because the look and feel of his store is gone. You're now really in somebody else's store. So the bright idea in that case was let's merge elements from both of these websites where you have the look and feel of the first website so you kind of know or you think you're still in that same store, but you're actually looking at the product in the other store. Now, in that case, what the court looked at, applied the Alice test and said, sure, there's an abstract idea here, but has it been sufficiently refined in a particular context and in a particular way to have that quote-unquote inventive concept that the court's talking about in the second prong of the Alice test? And they said, yes, what they've done is taken a unique problem that actually didn't exist before the internet and then solved it in a unique way, in a way that had a very concrete application and said, you've passed 101. And there wasn't anything that wasn't non-virtual about it, but they said, look, this is different than the Bilski sort of thing, the Alice sort of thing, the VISA sort of thing where you're supplying old business concepts of risk hedging, of intermediated settlements, of third-party guarantees and saying, well, let's do that. Let's throw in a general-purpose computer that does some computations or the normal things that computers do, and that's not going to do it because you're just applying an ancient business test. They said, that's unique. That's different. That's what we're saying here. We've got something that does have that kernel of an inventive concept. You can't do this with just imagining things. And I think there was one rejection in the file history that said, well, you can just imagine your hand of cards, and I think Your Honor can imagine how that would work out. You've got to have the real cards, well, or virtual, the real cards, the table, the dealing, and it has to be done in that sequence. And one of the things that Alice said is you don't have to just look at isolation at those elements and say, that's your inventive concept. You look at that as what the court called an ordered whole. And if you look at that ordered whole, you've got something. You've got something that is new, different, inventive, and outside of simply the realm of ideas. Can I say threes and nines are wild and patented? Changes the odds of the game, which is what you're aiming at. I think you could, Your Honor, if you had the rest of the elements there. But if fours gave you another card, then it would be anticipated. Pardon me? I'm sure you're going to run into all sorts of anticipation and obviousness problems with that sort of thing. But I mean, take a look at even the classic monopoly game. I mean, there's this concept of monopoly. Why isn't just the notion of wagering itself an abstract idea? It is, Your Honor. And so how does changing the way you do an abstract idea change it into something that's patentable under 101? That's basically what happens, I would submit, Your Honor, in almost any invention. You take some sort of concept, sometimes a law of nature, sometimes a purely mental abstract, and you apply it. Well, that's what they did in the DDR holdings case where the – Yeah, but the DDR, you actually end up with software or something like that that makes an actual web page on the computer look different. Here, you're just changing the order of betting. Well, I would submit, Your Honor, that it wasn't the software that made that past 101 in the DDR holdings case. It was the court looking at it and saying, you've got a unique problem here. You've solved it in a unique way. Yeah, but the unique way required programming a computer to perform that method. But they didn't rely on that, Your Honor. It wasn't saying we got a computer. Well, we can – you know what? Let's set DDR aside because I suspect that there's not complete disagreement or agreement about that case on this court. It seems to me that under Bilski and Alice and other precedents from our court like BiSafe and things like that, you're asking us to talk about an abstract idea and transforming that abstract idea to some other abstract idea and make it patentable. Your Honor, only in a very particular concept, context and solution. Let me step back. If you tried to go in to the patent office and say I want to patent the notion of betting whereby people put in money, and whoever wins, that person gets the money. That's an abstract idea, isn't it? Sure, and you'd be slammed right away on 102, Your Honor. Well, would you – I'm not asking about 102 though. I'm asking about 101. Do you think that's patentable under 101? No, Your Honor. Then why is refining that and saying let's have a method of betting where a couple rounds go one way and a couple rounds go – or one round goes the other way. It's not still just an abstract notion of how to bet. Your Honor, it's applied in this case in a very specific context of a player versus player. That might get you out of the preemption analysis that Alice looks at as one of the ways you get at 101. You can't preempt the entire field of betting. Exactly, Your Honor. But that's not the end of Alice. You still have to show that there's something patentable, and just because you patented a subset of an abstract idea doesn't mean it's not still an abstract idea. Well, Your Honor, I – well, Alice does not – Look, let me say this another way. You can't go in and say I patent every kind of conceivable method of betting because that's an abstract idea. Absolutely, Your Honor. Can you go in and patent – here's – and the specification may say there's a bunch of ideas of betting. I only want to patent one of those methods of betting. Can you do that? Your Honor, if it were, I think, particularized enough that, I mean, when we move – I mean, there is a continuum, obviously, from something that's purely abstract into something that is tangible. And Bilski made clear that tangible doesn't have to mean an actual machine or apparatus, although we'll submit that we have apparatus in this case. And that's the full quote is machine or apparatus, not just machine. But Alice takes that further and doesn't say anything at all about you've got to have something that you can knock on wood in the second aspect of the test. It's basically looking for that inventive concept, looking for the ordered relationship of the aspects of the claim as a whole and say, have we got something here? Have we got something that applies to a particular thing in the real world? And I don't want to irritate Your Honor, but I think the DDR case does exactly that, and I don't think it's a spork or an anomaly there that we're in a world where that's going to happen all the time. I mean, we live in a world that's partially virtual, and there isn't a knock on wood. Mr. Roney, just a reminder, you're into your rebuttal time. Okay, Your Honor, I'll save it, Your Honor. If that's okay with the Court. Mr. Wiedenthaler. Thank you, Your Honor, and may it please the Court. I'd like to start with responding to Judge Hughes's question about preemption. I think that— Can you actually just respond to his question about DDR holdings? Sure. I think that what DDR held is that there was a particular technological advance, that DDR could only take place in a technological environment, and therefore, there was a technological invention, the inventive concept related to technology, something that the patent laws were designed to protect, not methods of organizing human activity, but technology, and I think that is the theory underlying DDR. So what if, instead of the claims here, which aren't even close to this, they had claimed a method of—a new method of betting that could only be done on a computer because of computing issues or something like that, but they come up—I can't think of one, but let's just assume they did. Would that be patentable? It's a new method of betting, but it's a technological achievement because it uses a computer in a new way. Yes, Your Honor. I think that if the technology were such that—and the claim were such that it recited a particular way of betting that could only be done on the internet, that would convert the way that people normally play poker, but the way that they interact over the internet, and it's technologically based in that sense, I think DDR would suggest that it would be eligible. Although I would point out that BiSafe might suggest otherwise in that it says that the inventive concept has to be in the physical realm and in something tangible, and it relies on Alice and Mayo, and ultimately Mayo relied on Benson for that stance. So it may not be the case, but I think that under DDR, at least, there would be a very strong argument that a technological advance for betting would be eligible. Whether you could patent it or not, Nevada successfully banned card counting in its casino. I don't think you could get under Section 101. I think the concept of banning card counting in a casino would be not only an abstract idea, but also anticipated long ago. And so turning to the preemption hypothetical now, if I may, I just would like to point out that I think Mayo was clear that preemption isn't the touchstone for Section 101. Mayo said that the particular law of nature there was a very narrow law of nature, and it didn't preempt the entire field of treating Crohn's disease. Nevertheless, the court went on and said that that claim was ineligible under Section 101. Unless the court has further questions, I'll yield the remainder of my time. Thank you. Thank you. Just three small points, Your Honor. I think one of the things that – in DDR, it did talk about changing the look and feel of something, and to address Your Honor's question about the basketball court. If you make enough changes, I mean, there is a continuum there. You make enough changes, you do have something different. I wanted to just say a couple points here on – BiSafe was cited, and the court in that one says this is an easy case. It's almost a no-brainer. It's just taking a business law, in that case third-party guarantees, and saying, well, let's slap a computer on it.  In terms of the notion that anything that constitutes organizing human activity is non-patentable is a complete misreading of Alice, where the court was simply saying to the petitioner, who argued that, well, it's not an abstract idea if it involves human activity. The court just said, no, that's not true, but that's completely different from saying simply something that involves organizing human activity is per se non-patentable. That's not what the court said at all. Thank you. Thank you. These matters will stand submitted.